UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CESAR MATEO,

                          Plaintiff,

         -against-

R. ERCOLE. SUPERINTENDENT,
G. WILLIAMS, CORRECTION OFFICER,
M. KASPER, CORRECTION OFFICER,

                         Defendants.

08 Civ. 10450 (RJH) (DCF)

**MEMORANDUM OPINION AND ORDER**

---

Richard J. Holwell, District Judge:

      Cesar Mateo ("Mateo"), a prisoner currently incarcerated at the Coxsackie Correctional Facility, has brought several actions *pro se* against various prison officials pursuant to 41 U.S.C. § 1983 ("Section 1983"). In this case, Mateo is suing three employees of the New York State Department of Correctional Facilities ("DOCS"): Superintendant Robert Ercole ("Ercole"), Corrections Officer Glen Williams ("Williams"), and Corrections Officer Michael Kasper ("Kasper"). All three defendants worked at the Green Haven Correctional Facility ("Green Haven") while Mateo was incarcerated there in 2008. Mateo raises claims of harassment and retaliation against Williams and Kasper and a claim of supervisory liability against Ercole. Defendants have moved to dismiss the complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the Court converts defendants' motion to one for summary judgment and grants the converted motion.

### BACKGROUND

    For the purposes of this motion, the following facts are taken as true.

1

Mateo filed this lawsuit sometime between October 30, 2008 and November 3, 2008.[1] The complaint alleges three sets of incidents in which the defendants harassed, threatened, and retaliated against Mateo for grievances he filed against defendants Williams and Kasper. First, Mateo alleges various incidents of harassment and retaliation involving the denial of recreation and showers (the "September incidents"). On September 5, 2008, the plaintiff asked Williams and Kasper to place him on a list for recreation and shower, a request that the defendants allegedly denied. (Compl. 3.) Mateo further alleges that the water to his cell was subsequently cut off, which "caused [him] to feel sick, symptoms [he] related to high blood pressure," and for which he received medication. (*Id.*) Mateo filed a grievance that day, which was investigated and denied. (*Id.* at 3–4.) Thereafter, Mateo alleges that he "was deprived of recreation and showers" on "numerous occasions" by Williams and Kasper in retaliation for the grievance. (*Id.* at 3.) Mateo filed grievances about these incidents as well. (Bellamy Decl., Exs. C, D.)

Second, Mateo alleges that on October 22, 2008, Williams "threatened to physically harm me" and that Kasper "threatened to give me trouble" if he failed to "sign off" on grievances he had filed against them (the "October 22 incident"). (Compl. 4.) Mateo did not file a grievance about the incidents, but instead wrote a letter to Ercole that day detailing the alleged threats and requesting relief. (*Id.*)

---

[1] In the Second Circuit, "for statute of limitations purposes, a pro se prisoner's complaint is deemed filed on the date that the prisoner 'turn[s] his complaint over to prison officials' for transmittal to the court, not when the court actually receives it." *Abbas v. Dixon*, 480 F.3d 636, 638 n.1 (2d Cir. 2007) (quoting *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993), *modified on other grounds*, 25 F.3d 81 (2d Cir. 1994)). District courts have applied that rule in assessing whether claims have been exhausted prior to bringing suit. *See Dimodica v. U.S. Dep't of Justice*, No. 05-2165, 2006 WL 89947, at *3 (S.D.N.Y. Jan. 11, 2006) (Lynch, J.). The Court therefore deems Mateo's complaint filed when he turned it over to prison officials, which occurred sometime between October 30, when he signed it, and November 3, when it was postmarked.

Third, the complaint alleges that on October 30, 2008, Kasper issued "a fabricated and retaliatory misbehavior report" against Mateo for his refusal to comply with an order to attend an unscheduled clinic appointment (the "October 30" incident).  (*Id.*)  The complaint in this case is dated that same day.

In addition to these incidents, the complaint alleges that Ercole's failure to grant the plaintiff's grievances and relief requested in his letters exposed him "to further harassment and retaliation by [Ercole's] security staffs [*sic*]."  (*Id.* at 3.)

## DISCUSSION

### I.  Converting the Motion

On a motion to dismiss, the Court accepts the complaint's allegations as true and draws all reasonable inferences in the plaintiff's favor.  *In re DDAVP Direct Purchaser Antitrust Litigation*, 585 F.3d 677, 692 (2d Cir. 2009).  Where a motion is premised on the plaintiff's failure to exhaust his administrative remedies, the question is whether nonexhaustion is clear from the face of the complaint.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (exhaustion is an affirmative defense, so inmates need not specially plead or demonstrate it in their complaints).  If nonexhaustion is clear, a motion to dismiss should be granted.  *Shaw v. City of New York*, No. 08-3997, 2009 WL 1110789, at *3 (S.D.N.Y. Apr. 21, 2009) (quoting *McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003)).  If it is not, the court may convert the defendant's motion to one for summary judgment "limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused."  *McCoy*, 255 F. Supp. 2d at 251; *see* Fed. R. Civ. P. 12(b).

If the court chooses to convert the motion, it must "afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (internal quotation marks omitted). The court need not give formal notice of its intention if "the parties were . . . apprised of the likelihood of conversion by less formal or direct means and, in fact, had a sufficient opportunity to present the materials relevant to a summary judgment motion." 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (3d ed. 2004); *see In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985) ("The essential inquiry is whether the [nonmovant] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.").

Here, the defendants claim that Mateo did not exhaust his remedies before filing this lawsuit. Mateo does not contend that he exhausted administrative remedies prior to the filing of this suit. Instead, he asserts that defendants' harassment and threats of retaliation for filing grievances precluded him from using the grievance process. (Pltf.'s Opp. 4–5.) In an abundance of caution, the Court will assume that nonexhaustion is not plain from the face of the complaint and treat defendants' motion as one for summary judgment limited to the issue of exhaustion. Formal notice to the parties is unnecessary here, since defendants attached as exhibits to their motion the records they have of Mateo's grievances and appeals. (*See* Bellamy Decl. Exs. A–D.) All parties were on notice of the possibility of conversion, as the defendants notified Mateo that the Court might choose to treat the motion to dismiss as one for summary judgment, and that to oppose it, Mateo would need to submit evidence, such as affidavits.

## II. Exhaustion

### A. The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, requires that prisoners exhaust all available administrative remedies before pursuing a lawsuit in federal court. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (exhaustion is required for "all inmate suits about prison life"); *Booth v. Churner*, 532 U.S. 731, 734 (2001) (exhaustion required before filing a Section 1983 claim for monetary damages even though monetary damages are unavailable as an administrative remedy). To properly exhaust a claim, a prisoner must comply with state grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Merely "[a]lert[ing] the prison officials as to the nature of the wrong for which redress is sought does not constitute proper exhaustion." *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (internal quotation marks and citation omitted). An "untimely or procedurally defective" administrative grievance also does not constitute proper exhaustion. *Woodford v. Ngo*, 548 U.S. 81, 83–84 (2006).

New York provides a three-tiered grievance procedure for inmates: first, the prisoner files a grievance with the Inmate Grievance Resolution Committee ("IGRC"). 7 N.Y. Comp. Codes R. & Regs. § 701.5(a)(2) (2009). Second, the prisoner may appeal an adverse IGRC decision to the facility superintendent, and third, the prisoner may appeal an adverse decision by the superintendent to the Central Office Review Committee ("CORC"). *Id.* §§ 701.5(b)–(d). An expedited procedure exists for grievances that allege harassment by prison staff: the grievance is sent directly to the superintendent, and, if the grievance "is a bona fide harassment issue, the

5

superintendent must initiate or request an investigation and render a decision, after which the prisoner could then appeal to the CORC." *Id.* § 701.8(c)–(d); *see Espinal v. Goord*, 558 F.3d 119, 125 (2d Cir. 2009) (internal citation omitted).  In the absence of any decision, the prisoner can appeal directly to CORC within twenty-five days.  7 N.Y. Comp. Codes R. & Regs. § 701.8(g).  CORC is required to respond within thirty days of receipt of the appeal.  7 N.Y. Comp. Codes R. & Regs. § 701.5(d)(3)(ii).

When a prisoner fails to properly exhaust his administrative remedies before filing suit, the action must be dismissed.  *See Burgos v. Craig*, No. 06-5505, 2008 WL 5210890, at *1 (2d Cir. 2008) ("[Exhaustion] must be completed before suit is filed, and completing the exhaustion requirements only after filing suit is insufficient."); *Neal v. Goord*, 267 F.3d 116, 121–22 (2d Cir. 2001), *abrogated in part on other grounds by Porter*, 534 U.S. 516.  This is so even if the claim has since been exhausted.  *See Mateo v. Alexander*, No. 08-8797 (RJH), 2010 WL 431718, at *3 (S.D.N.Y. Feb. 9, 2010); *Mendez v. Artuz*, No. 01-4157 (GEL), 2002 WL 313796, at *2 (S.D.N.Y. Feb. 27, 2002).  Dismissal is without prejudice, and the case may be refiled once the plaintiff has exhausted his remedies.  *See Brown v. Napoli*, 687 F. Supp. 2d 295, 298 (W.D.N.Y. 2009); *Chisholm v. New York City Dep't of Correction*, 2009 WL 2033085, at *3 (S.D.N.Y. July 13, 2009).

Mateo has not alleged that he has properly exhausted his administrative remedies for any of his claims.  The only fully exhausted grievances in the record are the two relating to the September incidents, and neither became fully exhausted prior to the filing of this action.  Mateo did not file a formal grievance regarding the October 22 and October 30 incidents, and regardless, exhaustion for those two incidents would have been impossible in so short a time frame, since the complaint is postmarked November 3.

### B. Exceptions to the Exhaustion Requirement

Although exhaustion of administrative remedies is mandatory under the PLRA, the Second Circuit has recognized that "in some circumstances, the behavior of the defendants may render administrative remedies unavailable." *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). Therefore, the Second Circuit has devised three exceptions to the requirement that the plaintiff exhaust administrative remedies. First, "the court must ask whether administrative remedies were in fact 'available' to the prisoner." *Id.* (citing *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004)). This includes both an inquiry into whether "the prison provided grievance procedures that inmates . . . could utilize" and one into whether threats rendered "all administrative remedies unavailable" or "some procedures that would ordinarily be available . . . effectively unavailable." *Id.* at 686–87. Second, the court should determine whether the defendants forfeited the defense by failing to raise or preserve it and whether the defendants' actions inhibiting the inmate's exhaustion of remedies would estop the defendants from raising the exhaustion defense. *Id.* at 686. Finally, the court "should consider whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.'" *Id.* (quoting *Giano v. Goord*, 380 F.3d 670, 676 (2d Cir. 2004)).[2]

---

[2] There is some doubt as to whether the *Hemphill* line of analysis has survived *Woodford v. Ngo*, 548 U.S. 81 (2006), and the Second Circuit has yet to decide the issue. *See Macias v. Zenk*, 495 F.3d 37, 43 n.1 (2d Cir. 2007) (declining to decide "what effect *Woodford* has on *Hemphill*'s holding that where administrative procedures are confusing 'a reasonable interpretation of prison grievance regulations may justify an inmate's failure to follow procedural rules to the letter.'") (quoting *Hemphill*, 380 F.3d at 690); *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 178 (2d Cir. 2006) ("We need not determine what effect *Woodford* has on our case law."). In *Woodford*, the Supreme Court held that prisoners must "properly" exhaust administrative remedies, which entails "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90–91. Courts in this circuit have acknowledged the tension between *Woodford* and the *Hemphill* analysis, but have continued to use the *Hemphill* test in the absence of circuit authority to the

Mateo cites "defendants' threat of physical retaliation," his fear of "potentially lethal" physical retaliation and "harassment" as reasons he failed to exhaust administrative remedies. (Pltf.'s Opp. 5). Construed liberally, Mateo presents arguments in favor of applying all three of the *Hemphill* exceptions to the instant case.

As to the first exception, Mateo has not alleged that Green Haven did not have adequate administrative remedies in place. To the extent he alleges that defendants' threats rendered administrative remedies effectively unavailable, "[t]he test . . . must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *Hemphill*, 380 F.3d at 688. Here, although Mateo purports to have been too fearful to exhaust his remedies, he actually filed grievances regarding the September incidents. (Compl. 3, Bellamy Decl. Exs. C, D.) Mateo appealed two denials of these grievances, and fully exhausted his remedies with respect to these two grievances on November 5, 2008 and December 3, 2008, both of which were after the filing of this action. (Bellamy Decl. ¶ 7.) Such action is inconsistent with an assertion that fear rendered the grievance process unavailable to Mateo, let alone to one of "ordinary firmness." *See Harrison v. Goord*, No. 07-1806 (HB), 2009 WL 1605770, at *6 (S.D.N.Y. June 9, 2009) (finding that plaintiff "continued to file grievance after grievance during the same period of time when he was allegedly being threatened and harassed," and therefore "a reasonable person of ordinary firmness . . . , as well as [the plaintiff] himself, would not have thought that administrative remedies were unavailable"); *Amador v. Superintendents of Dept. of Correctional Servs.*, No. 03-0650 (KTD), 2007 WL 4326747, at *8

---

contrary. *See, e.g.*, *Harrison v. Goord*, No. 07-1806 (HB), 2009 WL 1605770, at *6 n.6 (S.D.N.Y. June 9, 2009); *Winston v. Woodward*, No. 05-3385 (RJS), 2008 WL 2263191, at *6 (S.D.N.Y. May 30, 2008) (applying the three exceptions and collecting district court cases doing the same). This Court will do likewise.

(S.D.N.Y. Dec. 4, 2007) ("[T]he fact that three of the Plaintiffs filed formal grievances directly cuts against Plaintiffs' argument that the process is unavailable . . . .").

Mateo did not file grievances regarding the October 22 or the October 30 incidents. He did write a letter to Ercole about the October 22 incident; however, this "does not demonstrate that Plaintiff['s] efforts at grieving properly were thwarted, but rather shows that [plaintiff] merely selected to pursue informal avenues instead of the formal grievance procedure." *Amador*, 2007 WL 4326747, at *8. Moreover, Mateo continued to use the formal grieving process in his appeals to CORC regarding the September incidents during and after the time period of the October 22 and October 30 incidents. (*See* Bellamy Decl. Ex. A; 7 N.Y.C.R.R. § 701.5(d)(3)(ii).) His ability to submit a formal appeal during this time period cuts against his contention that administrative remedies were essentially unavailable to him. *See Winston v. Woodward*, 05-3385 (RJS), 2008 WL 2263191, at *8 (S.D.N.Y. May 30, 2008) (holding that an ability "to submit a formal appeal" implied that "from not only an objective point of view . . . , but also the actual subjective viewpoint of Plaintiff himself, that administrative remedies were in fact available to him during the relevant time period"). Therefore, Mateo's argument as to the first *Hemphill* exception fails.

Neither are the defendants estopped from asserting an exhaustion defense. Estoppel is found where "an inmate reasonably understands that pursuing a grievance through the administrative process will be futile or impossible." *Winston*, 2008 WL 2263191, at *9 (quoting *Carini v. Austin*, No. 06-5652 (NRB), 2008 WL 151555, at *3 (S.D.N.Y. Jan. 14, 2008)). An inmate could glean this understanding from prison officials' threats, beatings, denials of grievance forms, or by other misconduct deterring him from fulfilling the requisite procedure. *Hemphill*, 380 F.3d at 688. Here, Mateo has alleged that Williams and Kasper denied him

9

showers in retaliation for his filing grievances, that Kasper asked him to sign off on his grievances "or else [he] will have lots of trouble," and that Williams made menacing gestures toward him.  (Compl. 3; Letter from Cesar Mateo to Robert Ercole, Superintendent.)  Even if these allegations were of the sort that could estop defendants from asserting the non-exhaustion defense, however, it cannot be said that Mateo reasonably understood that pursuing his grievances would be futile.  Mateo actually did pursue grievances and appeals throughout the time period in question, defeating any inference from his allegations that he reasonably understood the grievance process to be futile.  *See McCullough v. Burroughs*, No. 04-3216 (FB), 2005 WL 3164248, at *4 (E.D.N.Y. Nov. 29, 2005) (estoppel requires "reasonable reliance" and "detriment"); *see also Berry v. City of New York*, No. 00-2834, 2002 WL 31045943, at *8 (S.D.N.Y. June 11, 2002) (Francis, M.J.) ("[T]he fact that the plaintiff actually did file several grievances and was successful in at least one case belies the notion that this statement led him to believe that the filing of a grievance was impossible or futile.") (internal quotation marks and alterations omitted).

The third *Hemphill* exception is also unavailing.  In the Second Circuit, "special circumstances" may exist even though administrative remedies are available and the defendants are not estopped that nevertheless justify the plaintiff's failure to comply with administrative procedural requirements.  *Hemphill*, 380 F.3d at 689.  Here, however, Mateo has not alleged any special circumstances, such as a reasonable misunderstanding of the grievance procedure, that would justify his failure to exhaust administrative remedies.  Indeed, Mateo has shown that he is capable of following the correct grievance procedure, since he pursued two of his grievances to full exhaustion after the filing of this case.

Finally, Mateo has made various allegations about his confinement and the grievance process, including that the process is "biased" (Compl. 4), that harassment and retaliation leveled against him is "racially motivated," and that an "ongoing statewide prison conspiracy" against him exists.  (Pltf.'s Opp. 1.)  Mateo's bare allegations of bias, racism, and conspiracy, however, fail to "raise a right of relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Even construed liberally, these allegations constitute only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and, as such, fail to state "a plausible claim for relief."  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

In cases involving unexhausted claims, such as this one, the law is "clear that the appropriate disposition of unexhausted claims is dismissal without prejudice."  *Mitchell v. Dep't of Correction*, 2008 WL 744041, at *6 (S.D.N.Y. Feb. 20, 2008) (Pitman, M.J.); *Doe v. Goord*, 2004 WL 2829876, at *8 (S.D.N.Y. Dec. 10, 2004) ("Dismissal of an action for failure to exhaust administrative remedies ordinarily is without prejudice.").  This is so even when the issue is decided on a motion for summary judgment.  *See Amador v. Superintendents of Dept. of Correctional Services*, 2007 WL 4326747, at *8 (S.D.N.Y. Dec. 4, 2007) ("I grant the Supervisory Defendants summary judgment as to the issue of exhaustion and these Plaintiffs' claims for injunctive and declaratory relief are hereby dismissed without prejudice."); *see also McCoy*, 255 F. Supp. 2d 233 (converting motion to dismiss to one for summary judgment and dismissing without prejudice).  Such a remedy is appropriate because "[f]ailure to exhaust administrative remedies is often a temporary, curable procedural flaw."  *Acosta v. Corrections Officer Dawkins*, 2005 WL 1668627, at *4 n.6 (S.D.N.Y. July 14, 2005) (quoting *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2003)).  "If the time permitted for pursuing administrative remedies has

11

not expired, a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit. . . . In such circumstances . . . dismissal without prejudice is appropriate." *Id.* Here, therefore, the appropriate disposition is to dismiss Mateo's suit without prejudice to allow him an opportunity to refile after having exhausted his administrative remedies.

## CONCLUSION

Defendants have adequately demonstrated that Mateo failed to exhaust his administrative remedies before filing suit in federal court, and plaintiff has not plausibly explained why any exception to exhaustion should apply. For the reasons given above, the action is dismissed without prejudice. In the event that the plaintiff has exhausted or does exhaust his administrative remedies fully, he may refile his complaint and reinstitute his suit.

SO ORDERED.

Dated: New York, New York
       September 16, 2010

_____
Richard J. Holwell
United States District Judge

12